IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES L. FREY, individually and on behalf of others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:11-CV-3093-N |
| FIRST NATIONAL BANK SOUTHWEST, | § § § § | |
| Defendant. | § § | |

# **ORDER**

This Order addresses Defendant First National Bank Southwest's ("First National") motion to dismiss [9] and Plaintiff James Frey's motion to certify class [37]. The Court denies First National's motion and grants Frey's motion.

## I. FREY AND FIRST NATIONAL'S EFTA DISPUTE

First National operates an ATM in Plano, Texas. The ATM imposes a fee for those who use the ATM but are not account holders at First National's bank. The Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA"), and its implementing regulation, 12 C.F.R. § 205.1, *et seq.*, require that any ATM operator that charges a fee for a transfer must have two separate notices of the fee. First, the ATM must have an external notice, in a prominent and conspicuous location, on the machine. *See* 15 U.S.C. § 1693b(d)(3)(B). Second, the machine must give notice either on the screen of the machine or on paper before a fee is charged. *See id.* A plaintiff who proves an EFTA violation is entitled to "any actual damage

ORDER – PAGE 1

sustained" as well as statutory damages. *See* 15 U.S.C. § 1693m(a). For an individual plaintiff, the statutory damages range between $100 and $1000. *Id.* § 1693m(a)(2)(A). In the class action context, however, a Court is permitted to award statutory damages from $0 up to a $500,000 maximum. *Id.* § 1693m(a)(2)(B). Frey, a non-First National Bank account holder, used an ATM operated by First National. According to Frey, the ATM did not have the required external fee notice. Frey does not dispute that the ATM had an on-screen fee notice, and he admits that he had actual notice that the ATM charged a fee. Nevertheless, Frey brought suit on behalf of himself and those similarly situated to recovery statutory damages.

First National moves to dismiss, alleging that Frey does not have standing to bring his claims. Meanwhile, Frey seeks to certify the following proposed class:

> All consumers who initiated an electronic funds transfer at the First National Bank Southwest ATM located at 1300 Preston Road, Plano, Texas, and were assessed a fee for withdrawing cash from the First National Bank Southwest ATM located at 1300 Preston Road, Plano, Texas on or after the date of one year prior to the filing of this action (November 9, 2010) through the date First National Bank Southwest posted a compliant notice on the ATM after suit was filed on April 26, 2012 (the "Class Period").[1]

## II. THE COURT DENIES FIRST NATIONAL'S MOTION TO DISMISS

First National moves to dismiss under Rule 12(b)(1), arguing that Frey suffered no "injury-in-fact" and thus, the Constitution prohibits the Court from entertaining his claim.

---

[1]The start date for the proposed class results from EFTA's one-year statute of limitations. *See* 15 U.S.C. § 1693(g).

ORDER – PAGE 2

### A. *Rule 12(b)(1) Standard*

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute," *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)), and should "grant[] [the motion] only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (citing *Home Builders*, 143 F.3d at 1010). In reality, "the federal courts have followed a general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances." *Nowak*, 81 F.3d at 1188. The plaintiff bears the burden of proof in the Rule 12(b)(1) context. *See Ramming*, 281 F.3d at 161. "'[W]hen standing is challenged on the basis of the pleadings,' [courts] must 'accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party.'" *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988)) (first alteration and omission in original).

### B. *Frey Suffered an Injury-in-Fact*

The three constitutional requirements for standing are: (1) an injury-in-fact that is concrete and particularized, (2) that injury must be caused by the defendant, and (3) it must

be likely that the court can redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The requirement of injury in fact is a "hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009).

The Court finds that Frey suffered an injury-in-fact. The Court agrees with the majority of federal courts to address the issue. Those courts hold that the violation of the statutory rights granted by EFTA confer standing on plaintiffs like Frey. *See Mabary v. Hometown Bank, N.A.*, No. 4:10-CV-3936, 2012 WL 3765020, at *3 (S.D. Tex. Aug. 30, 2012) (citing *Zabienski v. ONB Bank & Trust,* No. 12-CV-0130-CVE-TLW, 2012 WL 3583020, at *4 (N.D. Okla. Aug. 20, 2012); *Sucec v. The Greenbriar,* No. 5:11-cv-00968, 2012 WL 3079212, at *1 (S.D. W.Va. July 30, 2012); *Campbell v. Hope Cmty. Credit Union,* No. 10–2649–STA, 2012 WL 423432, at *3; *Kinder v. Dearborn Fed. Sav. Bank,* No. 10–12570, at *2 (E.D. Mich. Dec. 20, 2011); *In re Regions Bank ATM Fee Notice Litig.,* No. 2:11–MD–2202–KS–MTP, 2011 WL 4036691, at *4 (S.D. Miss. Sept.12, 2011)).

As those courts note, Congress provided for two forms of damages for violation of EFTA's notice provisions: actual and statutory. *See* 15 U.S.C. §1693m(a) (providing that, in event of EFTA violation, violator is liable for "any actual damage" and statutory damages). Thus, as those courts conclude, Congress intended to create a mechanism of redress for statutory violations even if those violations do not result in actual damages. *E.g.*, *Mabary*, 2012 WL 3765020, at *3. And even though Frey suffered no actual injury, and the Constitution requires a plaintiff suffer an injury-in-fact, "Congress may enact statutes

creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Id.* at *4 (citing *Hardin v. Ky. Utilities Co.,* 390 U.S. 1, 6 (1968); *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 (1973); *O'Shea v. Littleton,* 414 U.S. 488, 495 (1974)). EFTA creates a legal right to notice on the exterior of an ATM machine if that machine charges a fee for an electronic funds transaction. A failure to receive that notice is an injury-in-fact.

This Court disagrees with First National's contention that *Cargill, Inc. v. U.S.*, 173 F.3d 323 (5th Cir. 1999) provides differently. In that case, a group of mine owners argued that an advisory committee was not properly renewed, as required by the Federal Advisory Committee Act, because notice of renewal was not published in the Federal Register. *Id.* at 331-32. The Court held that the plaintiffs did not have standing to bring their claims because they had actual notice, based on federal register publication of a meeting that the plaintiffs actually attended, that the advisory committee continued to operate. *Id.* at 332. Further, the Court noted that "there [was] no indication that public monitoring of [the agency] was significantly thwarted by any technical violations" of the notice rules. *Id.*

The Court finds *Cargill* distinguishable because the statute and implementing rule in question in *Cargill* were procedural. They merely provided the mechanism by which an advisory committee could renew its charter: Federal Register publication. The rights granted by EFTA, on the other hand, are substantive: the statute specifically grants a consumer the right to sue for noncompliance with the notice provisions. Because the statute in *Cargill* was procedural, the plaintiffs were required to show some injury *other than violation of the*

*statute* because the statute did not provide them with any statutory rights. *Central & South West Servs., Inc. v. EPA*, 220 F.3d 683, 699 (5th Cir. 2000) (noting that procedural-rights plaintiff needs injury other than "government's failure to comply with the relevant procedural requirements"). Here, however, Congress provided specific substantive statutory rights to both the exterior and on-screen notice and made this right enforceable by suit for statutory damages. *See Carter v. Welles-Brown Realty, Inc.*, 553 F.3d 979, 988 (6th Cir. 2009) ("Congress . . . has the power to create new legal rights, and it generally has the authority to create a right of action whose only injury-in-fact involves the violation of that statutory right.").

EFTA grants Frey a substantive right to an exterior fee notice. Based on the allegations in the pleadings, Frey suffered an actual injury, even if Frey had actual notice that First National charged an ATM fee. The Court holds that this is sufficient to meet the Constitution's injury in-fact-requirement.[2] Accordingly, based on the pleadings, Frey has standing to bring his claims. The Court thus denies First National's motion.

### III. THE COURT GRANTS FREY'S MOTION TO CERTIFY

#### A. Class Action Certification Standard

Rule 23 provides the standard governing Frey's certification motion. Rule 23(a) requires Frey to show that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members

---

[2]Frey also pleads facts alleging that First National was responsible for this injury and that the Court can redress the injury by the award of statutory damages.

> is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a) also "implicitly carries a requirement of definiteness, meaning that an identifiable class must exist." *Conrad v. Gen. Motors Acceptance Corp.*, No. 3:10-CV-2220-N, 2012 WL 2551146, at *1 (N.D. Tex. June 12, 2012) (citing *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); 5 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 23.21 at 23-47 (3d ed. 1997)). The class must be capable of definition without resort to "intensive, individualized factual inquiries." *Pfeffer v. Has Retail, Inc.*, No. SA-11-CV-959-XR, 2012 WL 1910034, at *3 (W.D. Tex. May 24, 2012).

Frey must also meet the requirements of 23(b)(3). To do so, Frey must show that common issues of law or fact predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. FED. R. CIV. P. 23(b)(3).

### B. Frey Meets the Requirements of Rule 23(a)

***1. The Court Finds That the Proposed Class Is So Numerous that Joinder of All Members Is Impracticable.*** – Frey need only demonstrate "some evidence" or a "reasonable estimate" of the number of purported class members. *See James v. City of Dall.*, 254 F.3d 551, 570 (5th Cir. 2011) (citing *Pederson v. La. State Univ.*, 213 F.3d 858, 866 (5th Cir. 2000)). Frey has offered evidence that the proposed class contains over 1500 members. *See* Dep. of Richard Tracy 70:1-2, App. Supp. Pl.'s Mot. Certify 21. First National does not contest numerosity. Accordingly, the Court finds Frey has met his burden to show that the

proposed class is so numerous that joinder in impracticable. *See* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 3:12 (5th ed. 2011) [hereinafter "NEWBERG ON CLASS ACTIONS")(noting that "a class of 40 or more members raises a presumption of impracticability based on numbers alone") (citing cases).

***2. There Are Questions of Law or Fact Common to the Class.*** – To satisfy the requirements of Rule 23(a), the claims of every class member must "depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Wal-Mart Strokes, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). In other words, Rule 23(a)(2) requires that a common issue of law or fact will resolve a central issue of each class member's claims. *Id.*

The Court finds that there are common issues of law and fact. Every proposed class member must establish whether First National was the operator of the ATM and whether First National may avail itself of certain statutory defenses.[3] Further, facts establishing the period of time, if any, the exterior notice was missing are relevant to all proposed class members' claims. Thus, Frey has established that there are common issues of law or fact.

---

[3]EFTA provides a number of statutory defenses to liability. For one, if the operator has posted a notice in compliance with EFTA and "the notice is subsequently removed, damaged, or altered by any person other than the operator," the operator is not liable. *See* 15 U.S.C. § 1693h(d). An operator is also not liable under EFTA if the violation of the statute "was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such an error." *See* 15 U.S.C. § 1693m(c).

***3. Frey's Claims Are Typical of the Proposed Class.*** – Rule 23 requires the claims of the representative parties to be typical of the proposed class members' claims. The test for typicality is not demanding, *see Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993), and is satisfied if the representative plaintiff's claims arise out of the same event or course of conduct as the other proposed class members', or are based on the same legal theory. *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2012 WL 565997, at *2. (N.D. Tex. Jan. 27, 2012) (citing *Durret v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993)). The Court finds that Frey's claims are typical of the claims of the proposed class. The claims all arise out of the same issue: whether First National complied with EFTA's external notice requirement and, if so, when First National did so.

***4. Frey Is an Adequate Representative of the Proposed Class.*** – To show adequacy of representation, a plaintiff must show that (1) the plaintiff's counsel has the zeal and competence to represent the class; (2) the proposed class representative is willing and able to take an active roll in controlling the litigation; and (3) the absence of conflict and antagonism between the named plaintiffs and the interest of the class. *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005); *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005); *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 209 (N.D. Tex. 1997) (mem. op.).

The Court finds Frey an adequate representative. Although First National argues that Frey lacks sufficient knowledge to adequately represent the proposed class, the class

representative need not have a high level of knowledge. Rather, a class representative is adequate if he or she has a general understanding of his or her position as a plaintiff and the alleged wrongdoing of the defendant. *Kalodner*, 172 F.R.D. at 209. Here, Frey knows that EFTA requires an external fee notice and promises to do whatever is necessary to vigorously and adequately represent the proposed class. Accordingly, the Court finds that Frey has adequate knowledge.[4]

First National also argues that Frey cannot adequately represent the proposed class because he seeks different remedies than the proposed class members would. Frey stated in a deposition that he did not particularly care for a money reward and simply wanted to ensure First National's compliance with EFTA's demands. But although Frey might have stated that he did not seek a specific amount of money in the lawsuit, the complaint clearly seeks statutory damages. The record does not indicate that Frey refuses to seek statutory damages or is otherwise acting inconsistently with other proposed class members' interest. Frey's statements that statutory damages are not particularly important to him personally do not defeat Frey's adequacy as a class representative.

***5.   The Proposed Class Is Ascertainable Without Resort to Individualized Inquiries.*** – A class must be ascertainable by reference to objective criteria. Frey alleges, and First National does not dispute, that the ATM keeps records of its transactions. The ATM stores data of the personal account number ("PAN") of each consumer that was

---

[4]The Court also finds that Frey's counsel is adequate. Frey's counsel has handled numerous similar class actions. Indeed, First National does not dispute counsel's adequacy.

charged a fee. The first six digits of the PAN constitute the bank identification number ("BIN"). The BIN indicates the bank at which the consumer's account is located. With the ATM records, Frey may contact the banks, have the banks look up the account numbers, and ascertain the class by objective criteria. The Court finds that these records are sufficient objective criteria to ascertain the proposed class.

The Court recognizes that other cases have found ascertainability lacking in other EFTA fee-notice litigation. For example, in *Ballard v. Branch Banking and Trust Co.*, 284 F.R.D. 9 (D.D.C. 2012), the court expressed concern about using the PANs and BINs to locate class members where the numbers of banks "may have been hundreds if not thousands." In *Mowry v. JP Morgan Chase Bank, N.A.*, No. 06 C 4321, 2007 WL 1772142, at *5 (N.D. Ill. June 19, 2007), the court agreed that the proposed class was unmanageable because the potential class covered approximately twenty million transactions executed on sixteen different ATMs. But the proposed classes in *Mowry* and *Ballard* were far larger than the proposed class here. With approximately 1500 class members, the notification of those class members' banks to identify the class does not seem so burdensome as to be a reasonable to deny certification.

The Court also recognizes that EFTA defines "account" as one "established primarily for personal, family, or household purposes." 15 U.S.C. § 1693a(2). Other courts have found that this requirement might result in individualized inquiries about whether a particular consumer's account was used for personal or business purposes. *See, e.g.*, *Pfeffer*, 2012 WL 1910034, at * 3; *Cobb v. Monarch Fin. Grp.*, 913 F. Supp. 1164, 1174-75 (N.D. Ill. 1995).

In *Cobb*, the court analogized this EFTA definition to similar language in the Truth in Lending Act ("TILA"). TILA, which governs consumer loans, requires that the consumer use "the money, property or services which are the subject of the transaction . . . primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h). Meanwhile, EFTA protects accounts "*established* primarily for personal, family or household purposes." *See* 15 U.S.C. § 1693(a)(2). Under TILA, the court reasoned, a court must look to the transaction as a whole, and, if the transaction "involves a profit motive," TILA does not govern the loan. *Cobb*, 913 F. Supp. at 1174. The *Cobb* court applied the same reasoning to EFTA and examined whether the account was used for personal or business purposes regarding the withdrawal in issue. However, the Court thinks that this analogy should not apply.

Although both TILA and EFTA require something to be "primarily for personal, family, or household purposes," the statutes differ in exact language. TILA requires loan *proceeds* to be used for consumer purposes. Meanwhile, EFTA asks only whether an account is *established* primarily for personal use. It does not require that the proceeds of an ATM transaction be used for personal purposes. Nor does it require inquiry into whether the account was *mostly* used for personal purposes. It asks only for what the account was established. The Court thinks class members may establish this simply by inquiring with the banks as to whether the account is a personal account or a business account. To do so would be largely administrative. *See Kinder v. United Bancorp, Inc.*, No. 11-CV-10440, 2012 WL 4490874 (E.D. Mich. Sept. 28, 2012) (holding that the personal account concern "can easily be addressed when class members are identified by asking [the class members] to disclose

ORDER – PAGE 12

the primary purpose of their account."). Accordingly, the Court finds that the proposed class is ascertainable by reference to objective criteria.

### B. The Proposed Class Meets the Requirements of Rule 23(b)(3)

***1. Common Questions of Law or Fact Predominate.*** – Common proof can be used to establish liability, or lack thereof. If the representative plaintiff can prove a period of time in which the notice was missing, every proposed class member can utilize that proof. Because reliance is not necessary, proof of a missing notice is sufficient to establish a claim. Further, First National can use common proof to establish its lack of liability if, for instance, it proves that it had a procedure in place to ensure compliance but failed to comply due to a bona fide error, or if the sign was somehow removed by another person.

First National argues that common questions do not predominate because (1) each class member must prove that notice was absent when he or she used the ATM, and (2) each class member must prove that his or her account was established primarily for personal use. The Court disagrees.

Although Frey must prove the period of time that the external fee notice was absent, each proposed class member need not affirmatively prove that the fee notice was absent when the class member used the ATM. Rather, assuming sufficient evidence such that a reasonable juror could conclude that fee notice was absent for any particular period of time, any class member without affirmative proof that the notice was not there on any particular day is entitled to some inference that the notice was absent. Thus, the period in which the

sign was absent is a common issue of fact, and whether the notice was absent on any particular day is not an individualized inquiry defeating predominance.

The question of whether an account was for personal, family, or household purposes is not a predominance-defeating individual inquiry either. As the Court has discussed, the statute requires only that the account be established for personal, family, or household purposes. It requires no inquiry into the particular transaction at issue nor in the majority use of the account. Whether an account was established for personal or business purposes may be shown simply by inquiry with the account holder or the bank. *See supra* Part III(A)(5).

The Court finds that common issues predominate. The issues of when the notice was present (if at all), whether First National failed to comply due to bona fide error, and whether another person caused First National's failure to comply, predominate over any individual issues.

***2. A Class Action Is Superior to Other Available Methods***. – In determining whether a class action is a superior method the Court looks, among other things, to (1) the class members' interest in individually controlling their separate actions; (2) the extent and nature of existing litigation by class members concerning the same claims; (3) the desirability of concentrating the litigation in a particular forum; and (4) the likely difficulties of managing a class action. *See* FED. R. CIV. P. 23(b)(3). First National argues that the proposed class members have an interest in individual litigation, that there are management difficulties, and that a class action is otherwise not a superior means of adjudication.

ORDER – PAGE 14

First National first argues that the proposed class members have an individual interest in controlling their separate actions, and thus a class action is not the superior method of adjudicating the controversy. Specifically, First National points out that an individual plaintiff who successfully proves an EFTA violation is guaranteed a recovery of $100, while a member of a class action is guaranteed nothing. But this individual interest, if any, is minimal. It assumes that a potential individual plaintiff is aware of his or her rights, is willing to undertake to the burdens of litigation, and that the plaintiff is able to find an attorney willing to take the case. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Although it is possible that an individual plaintiff, fully informed, might be better off than a class member, this does not create an individual interest to defeat superiority.

Although EFTA might make an individual suit *possible* – i.e., not quite negative value – that fact alone does not mean that individual suits are *superior*. *See Tchoboian v. Parking Concepts, Inc.*, No. SACV 09-422 JVS (Anx), 2009 WL 2169883, at *9 (C.D. Cal. July 16, 2009) (rejecting argument that individual litigation is superior where statute provided for $1000 in statutory damages and attorney's fees); *Walker v. Calusa Invs., LLC*, 244 F.R.D. 502, 511 (S.D. Ind. 2007) (noting that "class members may be unaware of their claim" and that they "may not feel that it is worth the effort to file an individual suit seeking statutory damages of between $100.00 and $1000.00"). The Court finds that a plaintiff's individual interest in the litigation, if any, does not weigh heavily in the superiority analysis.[5]

---

[5]No other proposed class plaintiff has filed suit, indicating that an individual plaintiff may not have a particular interest in litigating his or her own claim. *See* NEWBERG ON CLASS ACTIONS § 4.70 (noting that other pending litigation is evidence that individual have an

      First National also argues that the proposed class is unmanageable. The Court has already discussed, and rejected, First National's manageability concerns. *See supra* Part III(B)(5). With just over an estimated 1500 members, the proposed class is not overwhelmingly large. Notification of the class seems to be a straightforward process. And the class does not pose any particularly difficult individual fact or law inquiries. Accordingly, the Court finds that manageability concerns do not defeat the class action's superiority in this case.

      The Court recognizes that other courts have denied certification of similar classes based on a variety of reasons. Some courts have found that where, as here, a statute provides for statutory damages *and* attorney's fees, class treatment is not superior because the law provides sufficient incentive for an individual plaintiff to pursue his or her small monetary claim. But even with recovery of costs and fees, few plaintiffs or lawyers are likely to pursue a claim of $100. See *Tchoboian*, 2009 WL 2169883, at *9; *Calusa Invs.*, 244 F.R.D. at 511.

      Other courts compare the likely damages awarded as a result of the statutory damages with the harm suffered by the plaintiff and conclude that where "the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff," class treatment is not superior. *See, e.g.*, *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003). Here, however, Congress alleviated this concern by capping the maximum award of statutory damages available in a class action. *See* 15 U.S.C. §1693m(a)(2)(B) (providing that court may award statutory damages up to $500,000). And

---

interest in controlling their own litigation).

if there were not a statutory cap, the consequences of the class action litigation – where the class otherwise meets Rule 23's requirements – does not prohibit class certification. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) *(*"[I]t is not appropriate to use procedural devices to undermine laws of which a judge disapproves.") (citing cases). Although the failure to provide an external fee notice when a notice appeared on the screen may seem trivial, the perceived importance of a statute should not weigh in the Court's certification analysis. In its enaction of EFTA, Congress was quite aware of the class action device. EFTA specifically contemplates its use. That First National might have more liability than some might think necessary does not defeat certification.

The Court also recognizes that class certification may put pressure on a defendant to settle. But as the Ninth Circuit notes, "[t]he fairness of the pressure i.e., the sociological merits of the small claims class action is not a question for us to decide." And further, although First National's *potential* liability is $500,000, a seemingly high number given how apparently innocuous the alleged conduct is, this potential liability is not cause to deny certification. For one, First National's ultimate liability may be nothing close to its potential liability. After all, the statutory damages provisions in this class action sets the statutory damages at "such amount as the court may allow." 15 U.S.C. §1693m(a)(2)(B); *see also Nadeau*, 2011 WL 1633131, at *4-5 ("A court may determine that statutory damages, in the face of the evidence of on-screen agreement to the fee and the extremely small amount of any actual damages, are de minimis."). To determine First National's ultimate liability requires a more developed record.

Finally, the Court notes that the class action mechanism has benefits other than allowing plaintiffs to recover where they otherwise might not. Class actions create efficiencies in the use of judicial resources. *See Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 716 (E.D. N.C. 2011) (noting that pursuing individual small claims is "more burdensome on the class members" and would "likely be a less efficient use of judicial resources"). Further, class actions guarantee consistent results among plaintiffs whose claims arise out of the same wrongful conduct. This consistency seems especially important in light of the latitude afforded the Court in determining the appropriate statutory award. Thus, these factors also weigh in favor of the superiority of the class action in this case.

Because the proposed class members have has no real interest in litigating the case individually, because there are no overwhelming manageability concerns, and because the class action provides efficiencies and consistency of result, the Court finds that class treatment is superior to other available methods. Accordingly, the Court finds that the class meets all requirements of Rule 23 and grants Frey's motion.

## CONCLUSION

For the reasons stated above, the Court denies First National's motion to dismiss and grants Frey's motion to certify.

Signed February 20, 2013.

_____
David C. Godbey
United States District Judge