IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES L. FREY, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | Civil Action No. 3:11-CV-3093-N |
| vs. | § § | |
| FIRST NATIONAL BANK SOUTHWEST, | § § | |
| Defendant. | § § | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiff James L Frey ("Plaintiff"), through his undersigned counsel, files this Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support.

**I.**

**BACKGROUND OF LITIGATION**

Plaintiff filed an action on September 9, 2011, alleging that First National Bank Southwest (the "Bank" or "Defendant") violated the Electronic Funds Transfer Act , 15 U.S.C. § 1693 *et seq.* ("EFTA"). Specifically, Plaintiff alleges that Defendant violated 15 U.S.C. § 1693b(d)(3)(C) which stated, in relevant part:

(C)  Prohibition on fees not properly disclosed and explicitly assumed by the consumer

No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless—

(i)      The consumer receives such notice in accordance with subparagraph (B) . . . .

1

In turn, Plaintiff alleges that Defendant violated the notice requirement that was set forth at subparagraph B (15 U.S.C. § 1693(d)(3)(B)):

(B) Notice requirements

(i) On the machine

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

On March 1, 2012, Defendant filed an Answer to Plaintiff's Complaint [Doc 5]. The parties conducted substantial formal and informal discovery, including depositions, concerning the facts and class certification related matters. Various contested motions were filed, including a motion to compel [Doc 10], a Motion to Dismiss [Doc. 11], and a Motion for Class Certification [Docs 37-38]. On February 20, 2013, the Court entered an Order denying Defendant's Motion to Dismiss and Granting Plaintiff's Motion for Class Certification [Doc 45]. The Court certified the following class:

> All persons who used the First National Bank Southwest ATM located at 1300 Preston Road, Plano, Texas, and were charged or assessed any transaction fee, including any "terminal owner fee," surcharge or ATM transaction fee of any kind, in connection with any electronic fund transfer or balance inquiry at the ATM between November 9, 2010 and April 26, 2012.

Defendant appealed the class certification order to the United States Court of Appeals for the Fifth Circuit. Following briefing and oral argument, the Fifth Circuit affirmed the Court's ruling. *Frey v First National Bank Southwest*, 602 Fed. Appx. 164 (5th Cir. 2015). Thereafter, the parties, through counsel, engaged in arms-length settlement negotiations. The parties also mediated with mediator Christopher Nolland. The parties ultimately executed a Class Action

Settlement Agreement ("Settlement Agreement") on or about September 1, 2015.[1]

## II.
## THE TERMS OF THE SETTLEMENT

In the interest of avoiding protracted and costly litigation, the Parties have agreed to a proposed settlement with the following basic terms:

(1) Defendant has agreed to create a settlement fund in the amount of $25,000.00 to be disseminated on a *pro rata* basis to every class member who submits a claim after the dissemination of notice, with any individual participating class member's share being capped at $200.00.

(2) Defendant has also agreed that any unclaimed amount of the Settlement Fund will be donated, on a *cy pres* basis, to the National Consumer Law Center, the Scottish Rite Hospital and the Public Justice Foundation.

(3) Class counsel will administer the settlement and distribute funds to claimants.

(4) Notice will be provided to class members by (1) publication in the Dallas Morning News: (2) posting a notice prominently displayed on the ATM; and (3) by internet web site. Defendant will pay $7,000 to Class counsel outside the settlement fund for notice costs.

(5) Separate from the settlement fund, Defendant has agreed to pay Class Counsel $127,000.00 for attorneys' fees and litigation costs and expenses.

## III.
## ANALOGOUS SETTLEMENTS OF CLAIMS ALLEGING VIOLATIONS OF THE EFTA'S ATM FEE DISCLOSURE REQUIREMENTS HAVE BEEN ROUTINELY APPROVED

Federal District Courts have routinely approved analogous class settlements under the EFTA. In this district, a similar settlement structure was approved in *Arthur v Valwood Park*

---

[1] A copy of the Settlement Agreement is appended hereto as Exhibit 1.

*Federal Credit Union*, No 3:10-CV-00952-B (N.D. Tex. 2011)(Boyle, J.). They have also been approved in other jurisdictions. For example, settlements similar to the one proposed in this case have been approved and implemented in the following cases: *Pike v. Nicks English Hut, Inc.* No. 1:11-cv-1304-MJD-WTL (S.D. IN); *Couch v. Indians, Inc.* No. 1:11-00963-MJD-WTL (S.D. IN); *Vitatoe v. Citizens Bank of New Castle,* No. 1:11-cv-1312-DML-WTL (S.D. IN); *Young v. First Federal Savings & Loan,* No. 1:11-cv-1242-MJD-JMS, (S.D. IN); *Hull v. Owen County State Bank,* No. 1:11-cv-1303-SED-MJD (S.D. IN); *Brake v. Highland Corporation,* No. 3:11-cv-620 (M.D. Tenn.)((Campbell, T.); *Gaylor v. Comala Credit Union,* No. 2:10-cv-000725 (M.D. Ala.)(Thompson, M.) ; *Hart v. Guardian Credit Union,* No. 2:10-cv-00855 (M.D. Ala.)(Albritton, H.); *Dragotta v. Northwest Bancorp, Inc.*, No. 09-cv-632 (W.D.Pa.) (Fischer, J.); *Jackman v. Global Cash Access Holdings, Inc.*, No. 09-cv-897 (W.D.Pa.) (McVerry, J.); *Nolf v. Allegheny Valley Bank of Pittsburgh*, 09-cv-645 (W.D. Pa.)(Bissoon, J.); *Polevoy v. Devon Bank*, 08-cv-4822 (N.D. Ill.)(Kennelly, J.); *Stone et al. v. Corus Bank, N.A.*, 08-cv-1746, (N.D. Ill.)(Bucklo, J.); *Anthony v. Fifth Third Bank (Chicago)*, 08-cv-4359, (N.D. Ill.); *Arbelo, et al. v. Charter One Bank*, 08-cv-1516, (N.D. Ill.)(Cox, J.); *Escalante v. Lincoln Park Savings Bank*, 08-cv-6152 (N.D. Ill.)(Ashman, J.); *Bruner v. AmericaUnited Bank & Trust Company*, 08-cv-124, (N.D. Ill.)(Nolan, J.); and, *Marsh v. ATM Capital Management Inc.*, 07-cv-5808, (N.D. Ill.)(Coar, J.).

### IV.
### PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigor of prolonged litigation.[2] Settlement agreements conserve judicial time and limit expensive litigation.[3]

---

[2] *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)("Particularly in class action suits, there is an overriding

Where, as here, the parties resolve class action litigation through a class-wide settlement, they must obtain the court's approval.[4] Review of a proposed class action settlement generally occurs in two steps. In the first instance, "[t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."[5] Here, this step is unnecessary because the Court has already certified the class and made all the required findings. Second, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."[6] If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to give notice of the proposed settlement to the class members.[7] Stated another way, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."[8]

The proposed settlement falls well within the "range of possible approval," particularly in light of the substantial risks and costs associated with further litigation. Furthermore, the settlement is entitled to a presumption of fairness, since it was reached through arm's-length

---

public interest in favor of settlement."); *Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611 (N.D.Tex. Dec. 11, 2003)("[T]he court should keep in mind the strong presumption in favor of finding a settlement fair."); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §11:41, at 90 (4th ed. 2002)(hereafter "*Newberg on Class Actions*")(Courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.").

[3] 4 *Newberg on Class Actions* §11:41, at 87 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

[4] *See* Fed.R.Civ.P. 23(e).

[5] *Manual for Complex Litigation* (Fourth) § 21.632 (2004)(hereafter "*Manual*").

[6] *Id.*

[7] *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

[8] *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

bargaining between experienced counsel, and does not evidence unduly preferential treatment or other obvious deficiencies. Therefore, the proposed settlement satisfies the standards for preliminary approval and warrants the dissemination of notice apprising class members of their opportunity to participate in the settlement, or to opt-out from or object to the settlement.

     **A.**     **A Review of the Applicable Factors Favors Approval of the Settlement**

At the preliminary-approval state, the Court should "make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms…"[9] Upon final approval, in determining whether a settlement is "fair, adequate and reasonable," the Fifth Circuit as instructed that a court should consider the following factors:

1. Evidence that the settlement was obtained by fraud or collusion;

2. The complexity, expense and likely duration of the litigation;

3. The stage of the litigation and available discovery;

4. The probability of plaintiffs prevailing on the merits;

5. The range of possible recovery and certainty of damages; and,

6. The opinions of class counsel, class representatives and absent class members.[10]

However, in determining whether the proposed settlement warrants preliminary approval, the Court is not required to engage in a rigorous analysis of these factors.[11] "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not

---

[9] *Manual* §21.633.

[10] *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

[11] *See Manual* §21.63 ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not engage in analysis as rigorous as is appropriate for final approval."); *see also In re OCA, Inc. Securities and Derivative Litigation*, 2008 WL 4681369, *11 (E.D.La. Oct. 17, 2008)("As this motion is for preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval.").

grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval."[12]  Because the Settlement Agreement here far exceeds any preliminary threshold regarding fairness, reasonableness and adequacy, the Court should preliminarily approve this class action settlement.

Here, the case was vigorously contested by both sides.  The case did not settle until after substantial litigation activity, including an appeal.  The settlement was monitored by mediator Chris Nolland and there is no suggestion of fraud or collusion.  Experienced class counsel supports the settlement in light of the substantial risks of continued litigation and the range of possible recovery.

### 1. The Proposed Settlement Negotiated By The Parties Enjoys An Initial Presumption of Fairness

At the outset, the proposed settlement should enjoy a presumption of fairness.  Courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."[13]  After the parties' arm's-length negotiations, the Court should not substitute its own judgment for the judgment of counsel and adjudicate the merits of the dispute.[14]  There is a "strong judicial policy favoring the resolution of disputes through settlement,"[15] and "a strong presumption in favor of finding the settlement fair."[16]  The very purpose of the compromise is to avoid the delay and expense of a trial.[17]  Rule 23(e) requires the court to intrude on that private consensual

---

[12] *Id; see also McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430 (E.D.Tex. 2002).

[13] 4 *Newberg on Class Actions* §11:41, at 90.

[14] *See Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971)("In examining a proposed compromise…the court does not try the case).

[15] *Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982),

[16] *Garza v. Sporting Goods Props., Inc.,* No. 93 CA-108, 1996 WL 56247, at *11 (W.D. Tex. Feb. 6, 1996).

[17] *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)("We have recognized that a class action settlement is a private contract negotiated between the parties).

agreement merely to ensure that the agreement is not the product of collusion and that, taken as a whole, it is fair, adequate and reasonable to all concerned.

### 2. The Substantial Risks Of Continued Litigation

While Class Counsel believe that Plaintiff's statutory claims are wholly meritorious, Plaintiff and the Class face real risks if this litigation continues. Defendant vigorously contends that an exterior notice was on the ATM for a portion of the Class period. Defendant also contends that it is entitled to the benefit of the "safe harbor" or "vandalism defense" based on allegations that the notice was removed by a third party. Various courts have accepted this defense and it presents significant risk to recovery by the Class.

The Parties respectfully submit that the risks attendant with continued litigation of the claims and defenses in dispute support the propriety of preliminary approval of the proposed settlement.

### 3. The Proposed Settlement Provides Fair and Substantial Relief To All Class Members

Under the terms of the proposed settlement, Participating Claimants in this case are entitled to a *pro rata* share of the Settlement Fund provided that no Class Member shall receive a settlement payment in excess of $200.00. $200 substantially exceeds the $3.50 fee paid by class members to use the ATM. By any measure, this is a reasonable result, constituting considerable relief to the class under the causes of action alleged here. This is not a case where the benefits to the class are largely injunctive, coupon-like, or of speculative value. Nor is this a situation in which the settlement disproportionately favors certain class members at the expense of others.

In short, if the parties did not agree to settle this case, the class certification process, motions briefing and trial would be lengthy, expensive and pose risks to both sides. The proposed settlement, on the other hand, permits a prompt resolution of the claims at issue, in a

manner that is fair, reasonable and adequate to the Class, while at the same serving the Congressional purpose of encouraging compliance with Federal consumer protection laws. This result will be accomplished at earlier than otherwise might be possible absent a settlement. Standing alone, the relatively expeditious resolution of the claims in dispute benefits the Class, specifically, and consumers, generally, and should be preliminarily approved.

V.

**THE PROPOSED NOTICE TO CLASS MEMBERS IS APPROPRIATE**

This Court has wide discretion in determining what constitutes reasonable notice of a class settlement under Rule 23(e), in form as well as method.[18] The notice should be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[19] Rule 23(c)(2)(B) states, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances. . . ."[20] Rule 23(e)(1) similarly requires, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."[21]

In this case, after careful discussion and consideration, the Parties agree on the content and methods of notice. The parties have agreed to three forms of notice: (1) notice on the ATMs at issue; (2) published notice and (3) internet notice. The parties concur that direct mail notice is not efficient in this action for two primary reasons: First, it would be difficult to obtain mailing addresses for the thousands of putative class members implicated by the proposed settlement.

---

[18] *See Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981), *modified on other grounds on rehearing*, 670 F.2d 71 (6th Cir. 1982); 7B Fed. Prac. & Proc. § 1797.6.

[19] *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005)(quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

[20] Fed.R.Civ.P. 23(c)(2)(B)

[21] Fed.R.Civ.P. 23(e)(1)

This is because the subject address data does not exist in any single depository. Instead, the information is within the possession of a substantial number of issuing banks which issued debit or credit cards to Plaintiff and the putative class. Second, the cost of direct mail notice in this case would be substantial and disproportionate to the recovery.

Recently, the Seventh Circuit found that these three forms of notice are appropriate in an EFTA case analogous to this one.[22] In *Hughes*, the Seventh Circuit reversed a district court's decertification of an EFTA class on the grounds that class members could not be readily identified and provided notice of the class action.[23] The Seventh Circuit confirmed that direct notice to class members is not required; rather notice can be provided by publication, posting on the ATMs and by internet website.[24] These forms of notice satisfy Rule 23 and due process.[25]

Therefore, the Notice set forth in the Settlement Agreement represents the best practicable notice in the context of the claims in dispute. Copies of the proposed notices are appended to the Settlement Agreement as Exhibits B1, B2 and B3. Defendant has agreed to the posting of notice on the ATM, so that repeat ATM customers will be notified.

As for the content of the Notice, Rule 23(c)(2)(B) provides: "The notice [to a Rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language: the nature of the action, the definition of the class certified, the class claims, issues or defenses, that a class member may enter an appearance through counsel if the class member so desires, that the court will exclude from the class any member who requests exclusion, stating when and how

---

[22] *Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 676-77 (7th Cir. 2013).

[23] *Id.*

[24] *Id.*

[25] *Id.*

members may elect to be excluded, and the binding effect of a class judgment on class members under Rule 23(c)(3)."[26]

The proposed form of notice describes the nature, history and status of the litigation; sets forth the definition of the Class; states the class claims and issues; discloses the right of Class members to seek exclusion from the Class or to object to the proposed settlement, as well as the deadlines for doing so, and warns of the binding effect of the settlement approval proceedings on people who remain in the Class.  In addition, the Notice describes the terms of the proposed settlement and provides contact information for Class Counsel, as well as identifying the fee that they propose to request from the Court.  The Notice also discloses the time and place of the Final Settlement Hearing and the procedures for commenting on the settlement and/or appearing at the hearing.  The contents of the notice therefore satisfy all applicable requirements.

## VI.

## CONCLUSION

For all of the foregoing reasons, the Parties respectfully request that the Court (1) grant preliminary approval of the proposed class action settlement; (2) authorize the publication of Class Notice; and, (3) schedule a final approval hearing approximately ninety (90) days after the date of preliminary approval.

---

[26] Fed.R.Civ.P. 23(c)(2)(B).

Respectfully submitted,

**CALHOUN & ASSOCIATES**

*/s/ Eric G. Calhoun*_____
ERIC G. CALHOUN
Texas Bar No. 03638800
1595 N. Central Expressway
Richardson, Texas  75080
(214) 766-8100  Telephone
(214) 308-1947  Facsimile
eric@ecalhounlaw.com

**CLASS COUNSEL**

**CERTIFICATE OF CONFERENCE**

Counsel for the parties conferred regarding this Motion for Preliminary Approval and counsel for Defendant, Leslie Johnson, indicated that her client does not oppose approval of the settlement.

*/s/ Eric G. Calhoun*_____
ERIC G. CALHOUN

**CERTIFICATE OF SERVICE**

I hereby certify on this 2nd day of September, 2015, that the counsel of record will be served with a copy of this document via the Court's CM/ECF system pursuant to the local rules of this Court.

*/s/ Eric G. Calhoun*_____
ERIC G. CALHOUN