IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES L. FREY, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § § | Civil Action No. 3:11-CV-3093-N |
| FIRST NATIONAL BANK SOUTHWEST, | § § § | |
| Defendant. | § | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff James L. Frey ("Plaintiff") files this Unopposed Motion for Final Approval of Class Action Settlement and Memorandum in Support.

**I.
PRELIMINARY STATEMENT**

Plaintiff and Defendant First National Bank Southwest ("Defendant") request the Court to grant final approval of the Class Action Settlement memorialized in the Settlement Agreement preliminarily approved by the Court in its Order dated September 11, 2015 [Doc. 59] ("Preliminary Approval Order").

Pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, notice was published in the Dallas Morning News on September 28 and 29, 2015.[1] Notice was also placed on each of the ATMs for a period not less than forty-five (45) days. Finally, notice was placed on the website specified in the Settlement Agreement and identified in the other

---

[1] *See* Affidavit of Publication, attached hereto as Exhibit "A".

1

forms of notice on or before September 28, 2015, continuing to date. No objections or requests for exclusion from the Class have been made. A number of claims have been received. Respectfully, the Settlement is fair, adequate and reasonable and satisfies all requirements for final approval.

## II.
## BACKGROUND OF LITIGATION

Plaintiff filed an action on September 9, 2011, alleging that First National Bank Southwest (the "Bank" or "Defendant") violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"). Specifically, Plaintiff alleges that Defendant violated 15 U.S.C. § 1693b(d)(3)(C) which stated, in relevant part:

> (C) Prohibition on fees not properly disclosed and explicitly assumed by the consumer
>
> No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless—
>
> (i) The consumer receives such notice in accordance with subparagraph (B) . . . .

In turn, Plaintiff alleges that Defendant violated the notice requirement that was set forth at subparagraph B (15 U.S.C. § 1693(d)(3)(B)):

> (B) Notice requirements
>
> (i) On the machine
>
> The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

On March 1, 2012, Defendant filed an Answer to Plaintiff's Complaint [Doc 5]. The parties conducted substantial formal and informal discovery, including depositions, concerning the facts and class certification related matters. Various contested motions were filed, including

a motion to compel [Doc 10], a Motion to Dismiss [Doc. 11], and a Motion for Class Certification [Docs 37-38]. On February 20, 2013, the Court entered an Order denying Defendant's Motion to Dismiss and Granting Plaintiff's Motion for Class Certification [Doc 45]. The Court certified the following class:

> All persons who used the First National Bank Southwest ATM located at 1300 Preston Road, Plano, Texas, and were charged or assessed any transaction fee, including any "terminal owner fee," surcharge or ATM transaction fee of any kind, in connection with any electronic fund transfer or balance inquiry at the ATM between November 9, 2010 and April 26, 2012.

Defendant appealed the class certification order to the United States Court of Appeals for the Fifth Circuit. Following briefing and oral argument, the Fifth Circuit affirmed the Court's ruling. *Frey v First National Bank Southwest*, 602 Fed. Appx. 164 (5th Cir. 2015). Thereafter, the parties, through counsel, engaged in arms-length settlement negotiations. The parties also mediated with mediator Christopher Nolland. The parties ultimately executed a Class Action Settlement Agreement ("Settlement Agreement") on or about September 1, 2015.

### III.
### THE TERMS OF THE SETTLEMENT

In the interest of avoiding protracted and costly litigation, the Parties have agreed to a proposed settlement with the following basic terms:

(1) Defendant has agreed to create a settlement fund in the amount of $25,000.00 to be disseminated on a *pro rata* basis to every class member who submits a claim after the dissemination of notice, with any individual participating class member's share being capped at $200.00.

3

(2) Defendant has also agreed that any unclaimed amount of the Settlement Fund will be donated, on a *cy pres* basis, to the National Consumer Law Center, the Scottish Rite Hospital and the Public Justice Foundation.

(3) Class counsel will administer the settlement and distribute funds to claimants.

(4) Notice will be provided to class members by (1) publication in the Dallas Morning News: (2) posting a notice prominently displayed on the ATM; and (3) by internet web site. Defendant will pay $7,000 to Class counsel outside the settlement fund for notice costs.

(5) Separate from the settlement fund, Defendant has agreed to pay Class Counsel $127,000.00 for attorneys' fees and litigation costs and expenses and $3,000.00 to Class Representative as an incentive fee.

## IV.
## ANALOGOUS SETTLEMENTS OF CLAIMS ALLEGING VIOLATIONS OF THE EFTA'S ATM FEE DISCLOSURE REQUIREMENTS HAVE BEEN ROUTINELY APPROVED

Federal District Courts have routinely approved analogous class settlements under the EFTA. In this district, a similar settlement structure was approved in *Arthur v Valwood Park Federal Credit Union*, No 3:10-CV-00952-B (N.D. Tex. 2011)(Boyle, J.). They have also been approved in other jurisdictions. For example, settlements similar to the one proposed in this case have been approved and implemented in the following cases: *Harter v. Beach Oil Co.,* No. 3:10-cv-0968 (M.D. Tenn. September 29, 2015); *Christy v. Heritage Bank*, No. 3:10-cv-00874 (M.D. Tenn. May 8, 2015); *Pike v. Nicks English Hut, Inc.* No. 1:11-cv-1304-MJD-WTL (S.D. IN); *Couch v. Indians, Inc*. No. 1:11-00963-MJD-WTL (S.D. IN); *Vitatoe v. Citizens Bank of New Castle,* No. 1:11-cv-1312-DML-WTL (S.D. IN); *Young v. First Federal Savings & Loan,* No. 1:11-cv-1242-MJD-JMS, (S.D. IN); *Hull v. Owen County State Bank,* No. 1:11-cv-1303-SED-MJD (S.D. IN); *Brake v. Highland Corporation,* No. 3:11-cv-620 (M.D. Tenn.)((Campbell, T.);

4

*Gaylor v. Comala Credit Union,* No. 2:10-cv-000725 (M.D. Ala.)(Thompson, M.) ; *Hart v. Guardian Credit Union,* No. 2:10-cv-00855 (M.D. Ala.)(Albritton, H.); *Dragotta v. Northwest Bancorp, Inc.*, No. 09-cv-632 (W.D.Pa.) (Fischer, J.); *Jackman v. Global Cash Access Holdings, Inc.*, No. 09-cv-897 (W.D.Pa.) (McVerry, J.); *Nolf v. Allegheny Valley Bank of Pittsburgh*, 09-cv-645 (W.D. Pa.)(Bissoon, J.); *Polevoy v. Devon Bank*, 08-cv-4822 (N.D. Ill.)(Kennelly, J.); *Stone et al. v. Corus Bank, N.A.*, 08-cv-1746, (N.D. Ill.)(Bucklo, J.); *Anthony v. Fifth Third Bank (Chicago)*, 08-cv-4359, (N.D. Ill.); *Arbelo, et al. v. Charter One Bank*, 08-cv-1516, (N.D. Ill.)(Cox, J.); *Escalante v. Lincoln Park Savings Bank*, 08-cv-6152 (N.D. Ill.)(Ashman, J.); *Bruner v. AmericaUnited Bank & Trust Company*, 08-cv-124, (N.D. Ill.)(Nolan, J.); and, *Marsh v. ATM Capital Management Inc.*, 07-cv-5808, (N.D. Ill.)(Coar, J.).

**V.**
**FINAL APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE**

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigor of prolonged litigation.[2] Settlement agreements conserve judicial time and limit expensive litigation.[3]

Upon final approval, in determining whether a settlement is "fair, adequate and reasonable," the Fifth Circuit as instructed that a court should consider the following factors:

1. Evidence that the settlement was obtained by fraud or collusion;

2. The complexity, expense and likely duration of the litigation;

3. The stage of the litigation and available discovery;

---

[2] *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611 (N.D.Tex. Dec. 11, 2003)("[T]he court should keep in mind the strong presumption in favor of finding a settlement fair."); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §11:41, at 90 (4th ed. 2002)(hereafter "*Newberg on Class Actions*")(Courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.").

[3] 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §11:41, at 87 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

4. The probability of plaintiffs prevailing on the merits;

5. The range of possible recovery and certainty of damages; and,

6. The opinions of class counsel, class representatives and absent class members.[4]

### 1. There Was No Fraud or Collusion and Substantial Litigation Took Place Before Settlement.

Here, the case was vigorously contested by both sides. The case did not settle until after substantial litigation activity, including an appeal. Both sides exchanged written discovery, produced documents and took depositions. The settlement was monitored by mediator Chris Nolland and there is no suggestion of fraud or collusion. Experienced class counsel supports the settlement in light of the substantial risks of continued litigation and the range of possible recovery.

### 2. The Proposed Settlement Negotiated By The Parties Enjoys An Initial Presumption of Fairness

At the outset, the proposed settlement should enjoy a presumption of fairness. Courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."[5] After the parties' arm's-length negotiations, the Court should not substitute its own judgment for the judgment of counsel and adjudicate the merits of the dispute.[6] There is a "strong judicial policy favoring the resolution of disputes through settlement,"[7] and "a strong presumption in favor of finding the settlement fair."[8] The very purpose of the compromise is to avoid the delay and

---

[4] *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

[5] 4 *Newberg on Class Actions* §11:41, at 90.

[6] *See Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971)("In examining a proposed compromise…the court does not try the case).

[7] *Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982),

[8] *Garza v. Sporting Goods Props., Inc.,* No. 93 CA-108, 1996 WL 56247, at *11 (W.D. Tex. Feb. 6, 1996).

6

expense of a trial.[9]  Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of collusion and that, taken as a whole, it is fair, adequate and reasonable to all concerned.

### 3. The Substantial Risks of Continued Litigation

While Class Counsel believe that Plaintiff's statutory claims are wholly meritorious, Plaintiff and the Class face real risks if this litigation continues.  Defendant vigorously contends that an exterior notice was on the ATM for a portion of the Class period.  Defendant also contends that it is entitled to the benefit of the "safe harbor" or "vandalism defense" based on allegations that the notice was removed by a third party.  Various courts have accepted this defense and it presents significant risk to recovery by the Class.

The Parties respectfully submit that the risks attendant with continued litigation of the claims and defenses in dispute support the propriety of preliminary approval of the proposed settlement.

### 4. The Proposed Settlement Provides Fair and Substantial Relief To All Class Members

Under the terms of the proposed settlement, Participating Claimants in this case are entitled to a *pro rata* share of the Settlement Fund provided that no Class Member shall receive a settlement payment in excess of $200.00.  It is anticipated that the Fund is more than sufficient to permit all participating claimants to receive $200.00.  $200 substantially exceeds the $3.50 fee paid by class members to use the ATM.  It also exceeds the minimum damages recoverable in an individual action under the ETFA.  By any measure, this is a reasonable result, constituting considerable relief to the class under the causes of action alleged here.  This is not a case where

---

[9] *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)("We have recognized that a class action settlement is a private contract negotiated between the parties).

the benefits to the class are largely injunctive, coupon-like, or of speculative value. Nor is this a situation in which the settlement disproportionately favors certain class members at the expense of others. While it is possible that the Class could recover more damages at a trial, it is unlikely that the factors taken into account support a large, punitive award of statutory damages here.

In short, if the parties did not agree to settle this case, the trial would be lengthy, expensive and pose risks to both sides. The proposed settlement, on the other hand, permits a prompt resolution of the claims at issue, in a manner that is fair, reasonable and adequate to the Class, while at the same serving the Congressional purpose of encouraging compliance with Federal consumer protection laws. This result will be accomplished at earlier than otherwise might be possible absent a settlement. Standing alone, the relatively expeditious resolution of the claims in dispute benefits the Class, specifically, and consumers, generally, and should be preliminarily approved.

## VI.
## THE REQUEST FOR FEES AND EXPENSES IS FAIR AND REASONABLE AND SHOULD BE APPROVED

### A. Applicable Legal Standards

In considering the appropriateness of an award of attorneys' fees and expenses in class action litigation involving a fee shifting statute, the Fifth Circuit has recommended use of the "lodestar method."[10] The lodestar method requires the Court to employ a two-step process: First, the Court multiplies what it deems to be a reasonable hourly rate by the number of hours reasonably expended in the case. Once the lodestar amount has been calculated, the Court

---

[10] *In re High Sulfur Content Gasoline Products Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008).

examines the amount of the fee and may adjust it upwards or downwards based on an analysis of the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[11]

In *Johnson*, the Fifth Circuit set forth twelve factors that should guide the Court's fee analysis in statutory fee award, or "fee-shifting" cases, like this one.[12] While the Court has an independent duty under Fed.R.Civ.P. 23 to the class to review the reasonableness of the fees[13] the Court's analysis "need not be meticulously detailed to survive appellate review."[14] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experiences, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[15]

**B.     Lodestar Analysis**

The lodestar and expenses for counsel here, as described in counsel's Declaration, is $195,000.00, reflecting 340 hours of attorney time, and costs exceeding $8,000.00.

---

[11] *Shipes v. Trinity Indus.*, 987 F.2d 311, 319-20 (5th Cir. 1993).

[12] The EFTA's statutory fee shifing provision is set forth at 15 U.S.C. § 1693m(a)(3).

[13] *See, e.g., Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998).

[14] *In re High Sulfur Content Gasoline Products Liab. Litig.*, 517 F.3d at 228.

[15] *Johnson*, 488 F.2d at 717-19.

### 1. Hourly Rates

The hourly rates for Plaintiff's counsel are well within the range of what is reasonable and appropriate in this market.[16] The hourly rates are within the range charged by attorneys with comparable experience levels for consumer class action litigation of a similar nature.[17]

### 2. Hours Expended

In support of this Motion, Plaintiff has submitted a declaration describing the time expended by Class Counsel to prosecute this litigation[18] There was not time for which compensation is now requested in this case that was "excessive, redundant, or otherwise unnecessary."[19] All time billed was reasonably necessary to achieve the successful outcome achieved for Plaintiff and the Class in this case.  Plaintiff respectfully submits that a fee and cost award of $127,000 should be approved.

### C. Application of the Johnson Factors Confirms the Appropriateness and Reasonableness of the Requested Fee

### 1. The time and labor required

The first factor is the amount of time devoted to the case by Plaintiff's counsel.  Class counsel performed substantial work in this case on a contingency basis, thus risking no compensation for his efforts.  Here, there was discovery, depositions, contested motion practice, an appeal and other activity involving substantial attorney time and effort.  Therefore, Plaintiff submits that this factor supports approval.

---

[16] *See* Declaration of Eric G. Calhoun, attached hereto as Exhibit "B".

[17] *See eg. DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 325 (W.D.Tex. 2007) (approving hourly rates of $500.00-550.00 for lead counsel and $350.00-475.00 for other counsel and associate attorneys).

[18] *See* Declaration of Eric G. Calhoun, attached hereto as Exhibit "B".

[19] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

### 2. The difficulty and novelty of the issues of the case

The second factor also supports approval. Counsel has had to expend a substantial amount of time on this case, to best position the legal theories being prosecuted for a successful outcome. This case presents difficult issues pertaining to alleged defenses, class certification and an appeal.

### 3. The skill required to perform the legal services properly

This factor is evidenced where "counsel performed diligently and skillfully, achieving a speedy and fair settlement, distinguished by the use of informal discovery and cooperative investigation to provide the information necessary to analyze the case and reach a resolution."[20]

Plaintiff's counsel is experienced in class action litigation generally, and consumer class action litigation, specifically, as demonstrated by the Declaration of Counsel appended to the Motion for Class Certification. Plaintiff's counsel has been routinely approved as class counsel in consumer class litigation. Furthermore, the quality of representation is demonstrated by results obtained.

Thus, this factor supports the fee award requested by Plaintiff's counsel in this case.

### 4. The preclusion of other employment

The number of hours required to properly and diligently represent the interests of the class precluded certain other employment by Plaintiff's counsel.

Thus, this factor supports the fee request.

### 5. The customary fee

This factor is discussed in connection with *Johnson* factor 12 below.

---

[20] *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, *12 (S.D. Tex. Dec. 18, 2001).

### 6. Whether the fee is fixed or contingent

Contingency risk is a consideration in setting reasonable attorneys' fees. Courts uniformly hold that when recovery is contingent, a higher fee should be awarded then when counsel undertake no risk of non-payment. [21]

In this case, Class Counsel undertook representation of Plaintiff on a wholly contingent basis. Class Counsel have not asked Plaintiff or any other class member to pay fees or any costs. Class Counsel were prepared to litigate this case to trial and on appeal, if necessary. Class Counsel have received no compensation to date in this case. The risks involved in undertaking this case on a contingent basis support an award of the agreed-upon fees and expenses.

### 7. Time Limitations imposed by the client or other circumstances

Plaintiff submits that this factor is neutral.

### 8. The amount involved and the results obtained

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained."[22] In this case, the amount of value created and the number of persons benefited supports the fee request. Those Class Members who care to participate in the settlement and return claims forms will receive an appropriate and valuable benefit. Specifically, Participating Class Members are entitled to receive a payment of up to $200 in cash, an amount significantly in excess of the amount of the fee surcharges that are at issue in this litigation.

---

[21] *Blum v. Stenson*, 465 U.S. 886, 902 (1984)(Brennan, J., concurring)("[T]he risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a District Court may award an upward adjustment to an otherwise compensatory fee."); *King v. United SA Federal Credit Union*, 744 F.Supp.2d 607, 615 (W.D.Tex. 2010)("Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.").

[22] *Farrar v. Hobby*, 506 U.S. 103, 144 (1992)(internal quotation omitted).

While the fees sought by Class Counsel may be large in relation to the amount that each Participating Class Member will receive, under the circumstances, the requested fees are wholly reasonable. As explained by the Western District of Texas:

> Some courts have raised concern in consumer protection cases as to whether the requested fee is reasonable in light of the amount of the sums earmarked for class members. However, the fact that the $100.00 to be distributed to each individual Class member may not be a great sum in relation to counsel's fee request does not the Complaint, the fee award cannot be diminished to maintain some ratio between the fee and the damages…
>
> \*\*\*
>
> Under fee-shifting statutes such as the FCRA, the amount of attorney fees awarded is not required to be proportionate to the amount of damages recovered.  This is to encourage private counsel to enforce important consumer rights legislation.[23]

### 9.  The experience, reputation and ability of the attorneys

This factor was addressed under *Johnson* factor 3 above.

### 10. The undesirability of the case

"Class action cases often carry elevated risks, a requirement of lengthy investigation through informal discovery, and a possibility of no recovery, all of which speak to the undesirability of such a case."[24] In addition to the contingency risks in this case, the risks of litigation on the merits were more than just hypothetical.  Many competent attorneys will not handle class action cases in this District and Circuit.

Thus, this factor supports the fee award requested by Plaintiff's counsel in this case.

---

[23] *King*, 744 F.Supp.2d at 616-17.

[24] *Id.* at 618.

13

### 11. The nature and length of the professional relationship with the client

Counsel has represented the Plaintiff previously. Plaintiff submits that this factor is neutral.

### 12. Awards in similar cases

The fee award requested in this case is consistent with attorney fee awards in other EFTA actions from federal courts around the country where the claims asserted were the same as the claim made in this case.[25]

In this case, the fees being sought by Plaintiff's counsel are reasonable when considered against the lodestar and the relief to the Class. Furthermore, an analysis of the *Johnson* factors confirms the reasonableness and appropriateness of the fee request.

## VII.
## THE REQUESTED PLAINTIFF'S INCENTIVE AWARD IS REASONABLE AND APPROPRIATE

Federal courts often approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and the burdens they shoulder during litigation. As set forth in the Settlement Agreement, Defendant has agreed to pay an incentive payment of $3,000.00 to Plaintiff. Plaintiff participated in the litigation and gave his deposition. This payment is warranted as a matter of public policy and is well supported by applicable authority.[26]

## VIII.
## CONCLUSION

For all of the foregoing reasons, the Parties respectfully request that the Court grant final approval of the proposed class action settlement.

---

[25] *See, e.g., Harter v. Beach Oil,* No. 3:10-cv-0968 (M.D. Tenn. 2015)(approving $109,000 for fees); *Christy v. Heritage Bank*, No. 3:10-cv-00874 (M.D. Tenn. 2015).

[26] *See, e.g., De Hoyos v. Allstate Corp.,* 240 F.R.D. 269 (W.D.Tex.2007) (approving award of $5,000 to named plaintiffs); *In re Educational Testing Service Praxis Principles of Learning and Teaching, Grades 7-12 Litigation*, 447 F.Supp.2d 612 (E.D. La. 2006)(approving incentive payments of $2,000 to each named plaintiff).

Dated:  December 22, 2015

                      Respectfully submitted,

                      **CALHOUN & ASSOCIATES**

                      */s/ Eric G. Calhoun*_____
                      ERIC G. CALHOUN
                      Texas Bar No. 03638800
                      1595 N. Central Expressway
                      Richardson, Texas  75080
                      (214) 766-8100  Telephone
                      (214) 308-1947  Facsimile
                      eric@ecalhounlaw.com

                      **CLASS COUNSEL**

## CERTIFICATE OF CONFERENCE

     Counsel for the parties conferred regarding this Motion for Final Approval and counsel for Defendant, Leslie Johnson, indicated that her client does not oppose approval of the settlement.

                      */s/ Eric G. Calhoun*_____
                      ERIC G. CALHOUN

## CERTIFICATE OF SERVICE

     I hereby certify on this 22nd day of December, 2015, that the counsel of record will be served with a copy of this document via the Court's CM/ECF system pursuant to the local rules of this Court.

                      */s/ Eric G. Calhoun*_____
                      ERIC G. CALHOUN